IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR SARASOTA COUNTY, FLORIDA

CHARLES F. ZACCHERO,

       Plaintiff,

vs.                                    CASE NO.:

NATIONAL CITY MORTGAGE,
a division of NATIONAL CITY
BANK OF INDIANA,

       Defendant.
_____/

## COMPLAINT

Plaintiff, CHARLES F. ZACCHERO, (hereinafter "Zacchero") sues NATIONAL CITY MORTGAGE, a division of NATIONAL CITY BANK OF INDIANA, (hereinafter "National City"), and alleges:

## GENERAL ALLEGATIONS

1.    Zacchero is the fee simple owner of a lot located in Sarasota County, Florida, legally described as follows:

> LOT 24, BLOCK 786, 12TH ADDITION TO PORT CHARLOTTE SUBDIVISION, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 13, PAGE 8 OF THE PUBLIC RECORDS OF SARASOTA COUNTY, FLORIDA.

(hereinafter, "Lot 24").

2.    National City, at all times material hereto, was a national banking association which, among other banking services originated loans for lot/home packages in Florida.

3.    In the summer of 2004, Coast Bank, another lender financing the construction of residential lot/home packages in Florida, approached Jesse Battle III, the principal of a small homebuilding firm, Construction Compliance, Inc. (hereinafter "CCI"),

and together concocted a scheme whereby CCI would supply certain lots and act as the builder in the marketing of lot/home packages in South Florida.

4. Pursuant to the scheme, individual investors would be solicited to purchase residential lot/home packages in Florida with the promise of no money down with the builder absorbing the interest on the construction loan, while representing to investors that the completed package would be sold at a substantial profit before the issuance of a certificate of occupancy for the home.

5. CCI was insolvent when approached by Coast and was not in the position financially or otherwise to honor contracts to build 20-30 homes per year beginning in the fall of 2004, let alone the nearly 500 home construction contracts which would be funneled to CCI pursuant to the plan, between the fall of 2004 and 2006.

5. CCI's financial condition continued to deteriorate from the time Coast began funneling construction contracts to CCI.

7. CCI was close to six million dollars in debt and was experiencing delays of at least six to eight months in securing building permits in the markets where it was building.

8. CCI was tiring of the relationship with Coast Bank and decided to generate customers on its own, and to find lenders willing to fund new deals as quickly as possible, since the new home market in Southwest Florida was already in descent.

9. CCI's principal, Jesse Battle III's challenge by the last quarter of 2005 was to find loan officers willing to "play ball" with him despite these deals being overpriced, and there being no chance that his company could fulfill the underlying home construction contracts being generated.

10. He found such a loan officer in Louis Rios, at National City.

11. Rios was able to have the CCI related loans underwritten without even a facial inquiry as to whether the lot prices on the closing statements were supported in the market, which they were not, or whether CCI could perform, which it could not.

11. Louis Rios, was aware of the financial condition of CCI as well as the nature of the new home market in Southwest Florida, and consequently was aware of the inherent risks associated with these deals to investors who were being funneled by CCI to Rios and National City as potential borrowers.

12. Zacchero was sold the investment package involving CCI and National City's loan officer, Louis Rios.

13. On or about February 24, 2006, Zacchero executed a note and mortgage to National City with respect to Lot 24 in the original principal amount of $229,500.00, copies of which are attached to the complaint as Exhibits "A" and "B," respectively, and on said date executed a construction loan agreement to National City attached to the complaint as Exhibit "C." Exhibit "B" was recorded as Instrument No. 2006044677 of the public records of Sarasota County, Florida.

15. In order to induce Zacchero into executing said note, mortgage and construction loan agreement, National City participated with other parties, including, but not limited to CCI, appraisers, real estate brokers, mortgage brokers, and other associated entities in deceiving Zacchero by manipulating the appraisal of the collateral property so as to significantly overstate the value, thereby misrepresenting the true fair market value of the property.

16. Zacchero reasonably relied upon the representations as to value, as well as the representations concerning CCI's ability to perform in reaching his decision to purchase the collateral property and enter into the loan transaction with National City.

17. As the result of the fraudulent actions committed by National City, including the misrepresentations associated therewith, Zacchero was significantly damaged in that his loan balance is substantially greater than the true fair market value of the property.

18. In addition to the damages detailed above, Zacchero incurred excessive closing costs and fees associated with said closing.

19. Additionally, National City disbursed construction funds to CCI at closing, and disbursed subsequent draws to CCI from Zacchero's construction loan account.

19. By early 2006, CCI had diverted millions of dollars of construction proceeds from construction loan accounts it had received from Coast Bank.

20. No construction activity was performed by CCI relative to Zacchero's lot, despite the distribution of construction funds to CCI from Zacchero's loan account, and by November of 2006, CCI ceased all construction activity, thereafter filing a bankruptcy petition on April 3, 2007, in the Bankruptcy Court for the Middle District of Florida (Docket Number 07-02650-CPM).

22. The acts committed by National City were part of a pattern of fraudulent conduct perpetrated upon Zacchero and other investors of properties in Sarasota County, Florida and resulting in mortgage balances far in excess of the fair market values of said properties.

23. At all times material hereto, National City knew that the appraisal was overstated and that excessive fees and costs were being extracted, and engaged in

material misrepresentations associated therewith.

24. Each cause of action alleged herein seeks damages which exceed the sum of $15,000.00, exclusive of interest, costs, and attorneys' fees.

25. All conditions precedent to suit have been met or waived.

## COUNT I
## RESCISSION OF NOTE AND MORTGAGE

26. Paragraphs 1-25 of this complaint are re-alleged.

27. National City authorized the acts and representations detailed above to be made to Zacchero in order to induce Zacchero to enter into the note and mortgage referred to in paragraph 14 above.

28. National City knew at the time it committed said acts and authorized the representations made that such representations were false.

29. Zacchero reasonably relied upon the representations set forth above in determining to enter into the note and mortgage.

30. By letter dated April 21, 2008, a copy of which is attached hereto as Exhibit "D," Zacchero through his counsel tendered the security under the note and mortgage to National City and demanded rescission of the note and mortgage.

31. National City failed to accept Zacchero's tender as of the deadline of April 23, 2008.

32. Zacchero has no adequate remedy at law, and hence, rescission is the only appropriate remedy available to Zacchero.

33. Zacchero has retained the undersigned for representation in this action and, by operation of §57.105(7), Fla. Stat., is entitled to an award of attorneys' fees and court

costs pursuant to paragraph 7 of the note, paragraphs 22 and 24 of the mortgage, and the attorneys' fees provisions of the construction loan agreement.

WHEREFORE, Zacchero demands judgment against National City for rescission of the note and mortgage, to include the reimbursement of all interest and charges paid to date to National City, plus interest, attorneys' fees and costs.

## COUNT II
## FRAUD

34. Paragraphs 1-25 of this complaint are re-alleged.

35. National City authorized the acts and representations detailed above to be made to Zacchero in order to induce Zacchero to enter into the note and mortgage referred to in paragraph 14 above.

36. National City knew at the time it committed said acts and authorized the representations made that such representations were false.

37. Zacchero reasonably relied upon the representations set forth above in determining to enter into the note and mortgage.

38. The allegations in paragraphs 3-23 of this complaint represent further fraud by National City.

39. As a direct and proximate result of National City's fraud, Zacchero has been damaged through the loss of anticipated equity and having incurred excessive fees and costs extracted during the closing process.

40. Zacchero has retained the undersigned for representation in this action and, by operation of §57.105(7), Fla. Stat., is entitled to an award of attorneys' fees and court costs pursuant to paragraph 7 of the note, paragraphs 22 and 24 of the mortgage, and the

attorneys' fees provisions of the construction loan agreement.

WHEREFORE, Zacchero demands judgment against National City for damages, interest, costs and attorneys' fees.

## COUNT III
## BREACH OF FIDUCIARY DUTY

41. Paragraphs 1-25 of this complaint are re-alleged.

42. National City owed Zacchero a fiduciary duty because:

   a. National City's role in the subject transactions exceeded that of a lender in a traditional lender/borrower relationship;

   b. National City orchestrated and finalized the subject transactions;

   c. National City received a greater economic benefit than from typical lending transactions and this benefit came at Zacchero's expense; and

   d. National City exercised substantial control over the subject transactions.

43. Zacchero was justified in placing confidence and trust in National City, and this trust and confidence were accepted by National City.

44. National City, as a result of its fiduciary duty to Zacchero assumed a duty to disclose facts material to the transaction, peculiarly within its knowledge, and not otherwise available to Zacchero.

45. National City breached this duty by failing to disclose the following material facts:

   a. self-dealing by insiders had inflated the purchase price of the real estate which National City was using as collateral for the loan;

   b. insiders were extracting excessive fees at closing, some of them undisclosed on the closing statement; and

  c. the appraisal commissioned by National City overstated the value of the real estate.

46. In sum, National City failed to disclose, fairly and honestly, to Zacchero all the facts which might have influenced Zacchero in regard to his decision to invest in the scheme sued on herein.

47. National City took unfair advantage of Zacchero and failed to act in Zacchero's best interests.

48. As a direct and proximate result of National City's breach of fiduciary duty, Zacchero has incurred substantial damages.

49. Zacchero has retained the undersigned for representation in this action and, by operation of §57.105(7), Fla. Stat., is entitled to an award of attorneys' fees and court costs pursuant to paragraph 7 of the note, paragraphs 22 and 24 of the mortgage, and the attorneys' fees provisions of the construction loan agreement.

WHEREFORE, Zacchero demands judgment against National City for damages, interest, costs and attorneys' fees.

Dated: April 23, 2008.

             LEVIN TANNENBAUM
             1680 Fruitville Road
             Suite 102
             Sarasota, Florida 34236
             Telephone: (941) 308-3157
             Facsimile: (941) 316-0301
             Attorneys for Zacchero

             *[signature]*
             Alan E. Tannenbaum, Esq.
             Florida Bar No. 0259144